Common Pleas Court of Trumbull County.

STATE EX REL I. J. FULTON, SUP'T OF BANKS V.
C. F. ARCHER, ET AL.

Decided November 12, 1932.

*Fillius & Fillius (John Q. T. Ford)*, for plaintiff.
*Gillmer, Gillmer & Lewis,* for defendant.

GRIFFITH, J.

This is an action on a promissory note. The plaintiff claims that on December 11, 1926, the defendant executed and delivered to the Newton Falls Board of Trade Improvement Association his promissory note in the sum of two hundred fifty ($250.00) dollars due two years after date; that the note was endorsed and transferred before maturity to the plaintiff bank and that the plaintiff is now the holder in due course and prays judgment thereon.

The defendant admits the execution of the note and says that it was given for payment of the purchase price of a lot; that it was not binding upon defendant until the payee, the Newton Falls Board of Trade Improvement Association, had a plant employing fifty men erected in the village, and until the payee secured fifty people, each of whom would agree to pay two hundred fifty ($250.00) dollars for a chance on certain lots that were to be

raffled, i. e. the lots so conveyed to the several subscribers to be determined by a drawing. The defendant says that the contract is void since it was based upon a scheme of chance; that the plaintiff bank acquired the note with full knowledge that it was not binding upon defendant until the plant was operating with a force of fifty men, and further that the bank had knowledge of the unlawfulness of the lottery. It is undisputed that the note was endorsed and transferred and delivered to the First State Bank of Newton Falls before maturity. There are but two questions here:

First: Was the consideration for the note illegal and therefore the note void because based upon a lottery in contravention of Section 13063 of the General Code?

Second: Did the plaintiff bank have notice of the infirmity of the note, if such existed?

Special statutes have been enacted in this state respecting gambling, and among others Section 13063, General Code, provides as follows:

"Whoever vends, sells, barters, or disposes of a ticket, order or device for or representing a number of shares or an interest in a lottery, "policy" or scheme of chance, by whatever name, style or title denominated or known, whether located or to be drawn, paid or carried on within or without this state, shall be fined not more than five hundred dollars or imprisoned not more than six months, or both."

It appears from the evidence that the Board of Trade Improvement Association undertook to raise money by agreeing to sell fifty lots at two hundred and fifty ($250.-00) dollars each. And the money derived from such sales was to be distributed as follows:

Forty per cent to go to the Board of Trade to be used as a cash bonus to secure new industries, and sixty per cent to be paid to the owner of the land for the purchase price of the lots themselves.

The contract further provided that the agreement shall not be binding until fifty of the lots have been subscribed for and that the lots to be conveyed to the subscribers shall be determined by public drawing held at the First

State Bank of Newton Falls, Ohio, on a date to be determined.

The evidence as to whether the board of trade agreed to have a plant erected, employing fifty men, is of such conflicting and irreconcilable character that it is not necessary in the determination of this case to make a finding of this fact: Was this contract illegal because based upon a scheme of chance? The scheme by which the Board of Trade undertook to raise money by agreeing to convey lots to subscribers at two hundred fifty dollars ($250.00) each, the lot or lots to be conveyed to be determined by a drawing, was a scheme of chance and for this reason such contract is void. And no action can be maintained by the Board of Trade to recover the agreed price of two hundred fifty dollars ($250.00) or any part thereof.

Many definitions of the word "lottery" are found in the books. An often quoted definition is given by Folger, J., in *Hull* v. *Ruggles,* 56 N. Y. 424, which is:

"Where a pecuniary consideration is paid and it is determined by lot or chance according to some scheme held out to the public what and how much he who pays the money is to have for it—that is a lottery."

A lottery is a scheme by which a result is reached by some action or means taken and in which result man's choice or will has no part nor can human reason, foresight, sagacity or design enable him to know or determine such result until the same has been accomplished.

It is apparent that if the dominating determining element is one of chance that element gives character to the whole scheme and from the testimony and exhibits offered in this case it is apparent that there was an element of chance as to what lot or lots each purchaser would receive. The note in question was executed for the payment of the purchase price of the lot that was to be determined by a drawing embracing the complete element of chance, and therefore, as between the maker of this note, the defendant, and the Newton Falls Board of Trade Improvement Association, this is a valid defense.

The next question for determination is: Is the plaintiff bank the legal holder in due course of this note? If the bank had knowledge of the infirmity of the note, of course it is not a *bona fide* holder in due course, but it is a holder subject to the infirmity of which it had knowledge. The testimony is to the effect that Reese Jones was the president of the First State Bank of Newton Falls, and a director therein, and a member of the finance committee, and one of the active heads of the Board of Trade. He had full and complete knowledge of the manner and method by which the fifty lots were to be sold, and of the fact that the drawing was to be held at the First State Bank on a Saturday afternoon to be determined at a later time, and that this drawing was to determine for the purchasers of lots just what lots were to go to each purchaser. With this full and complete knowledge in the possession of the president of the bank and one of the members of the finance committee of the bank, the bank accepted this sheaf of notes as collateral security for an obligation of the Board of Trade to the bank. The testimony is that Mr. Jones was the business head of the Board of Trade and at the same time he was the chief executive of the bank in the conduct of its business. Notice to and knowledge of the president of a bank is notice to and knowledge of the bank. The knowledge possessed by the president of the bank is binding upon the bank, especially where the president of the bank is a member of the finance committee of the institution. There is further evidence that some of the directors of the bank were directors of the Board of Trade and they had knowledge of the fact that there was to be a drawing or a scheme of chance in the determination of what lots would go to the various subscribers.

I therefore conclude in view of the reasons assigned and adopted that the contract was illegal and void and in contravention of Section 13063 of the General Code and that the plaintiff bank had notice and knowledge of the conditions of the contract which was based upon a lottery, and it must follow that judgment should be entered for and is here entered for the defendant, to which exceptions are saved to all parties adversely affected by this decision.